CLEMSON BROS., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16088, 10730. Promulgated March 28, 1929.

*Arthur B. Foye, C. P. A.*, for the petitioner.

*James A. O'Callaghan, Esq.*, and *P. A. Boyer, Esq.*, for the respondent.

## OPINION.

TRAMMELL: In the petition it is alleged that the respondent erred in reducing the petitioner's invested capital for the fiscal year 1919 on account of income and profits taxes for the preceding taxable year prorated from the dates such taxes were due and payable. In his answer the respondent admits taking the action complained of by the petitioner and also admits that such action was erroneous, but avers that no part of the income and profits-tax liability of the petitioner for the preceding taxable year should be included in invested capital, as of the beginning of the fiscal year 1919. We think section 1207 of the Revenue Act of 1926 is applicable and controlling here. The adjustment of the petitioner's invested capital for the fiscal year 1919 as made by the respondent with respect to the income and profits tax for the preceding year is approved. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168; *Randall Brothers, Inc.*, 4 B. T. A. 291; *Harriet Cotton Mills*, 5 B. T. A. 734; and *The Gazette Co.*, 6 B. T. A. 1016.

With respect to the issue relating to the determination of the credit for war-profits tax, the pertinent provisions of the Revenue Act of 1918 are as follows:

SEC. 330. That in the case of the reorganization, consolidation, or change of ownership after January 1, 1911, of a trade or business now carried on by a corporation, the corporation shall for the purposes of this title be deemed to have been in existence prior to that date, and the net income and invested capital of such predecessor trade or business for all or any part of the prewar period prior to the organization of the corporation now carrying on such trade or business shall be deemed to have been the net income and invested capital of such corporation.

If such predecessor trade or business was carried on by a partnership or individual the net income for the prewar period shall, under regulations prescribed by the Commissioner with the approval of the Secretary, be ascertained and returned as nearly as may be upon the same basis and in the same manner as provided for corporations in Title II, including a reasonable deduction for salary or compensation to each partner or the individual for personal services actually rendered.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 311. (a) That the war-profits credit shall consist of the sum of:

(1) A specific exemption of $3,000; and

(2) An amount equal to the average net income of the corporation for the prewar period, plus or minus, as the case may be, 10 per centum of the difference between the average invested capital for the prewar period and the invested capital for the taxable year. If the tax is computed for a period of less than twelve months such amount shall be reduced to the same proportion thereof as the number of months in the period is of twelve months.

(b) If the corporation had no net income for the prewar period, or if the amount computed under paragraph (2) of subdivision (a) is less than 10 per centum of its invested capital for the taxable year, then the war-profits credit shall be the sum of:

(1) A specific exemption of $3,000; and

(2) An amount equal to 10 per centum of the invested capital for the taxable year.

(c) If the corporation was not in existence during the whole of at least one calendar year during the prewar period, then, except as provided in subdivision (d), the war-profits credit shall be in the sum of:

(1) A specific exemption of $3,000; and

(2) An amount equal to the same percentage of the invested capital of the taxpayer for the taxable year as the average percentage of net income to invested capital, for the prewar period, of corporations engaged in a trade or business of the same general class as that conducted by the taxpayer; but such amount shall in no case be less than 10 per centum of the invested capital of the taxpayer for the taxable year. Such average percentage shall be determined by the Commissioner on the basis of data contained in returns made under Title II of the Revenue Act of 1917, and the average known as the median shall be used. If such average percentage has not been determined and published at least 30 days prior to the time when the return of the taxpayer is due, then for purposes of such return 10 per centum shall be used in lieu thereof; but such average percentage when determined shall be used for the purposes of section 250 in determining the correct amount of the tax.

The petitioner contends that inasmuch as it was a reorganization of the business carried on by George N. Clemson as an individual during the period from January 1, 1911, to October 1, 1917, the average net income and invested capital of the business during the years 1911, 1912, and 1913 constitute its average prewar net income and invested capital for the purpose of computing the war-profits credit, and further contends that the average net income for the prewar period was $120,601.63 and the average invested capital for that period was $740,396.14. These amounts the petitioner arrives at in the following manner by beginning with its invested capital on

October 1, 1917, the net income of the sole proprietorship for the 9-month period ended September 30, 1917, both as determined by the respondent, and using the data as set out in our findings of fact relating to house and personal expenses and net income:

| | | |
|---|---:|---:|
| Invested capital, Oct. 1, 1917 | | $1,240,623.03 |
| Deduct: | | |
| Profit for 9 months ended Sept. 30, 1917 | $254,094.38 | |
| Less withdrawals during period | 112,434.14 | |
| | | 141,660.24 |
| Invested capital, Jan. 1, 1917 | | 1,098,962.79 |
| Deduct: | | |
| Profit for year ended Dec. 31, 1916 | 251,005.73 | |
| Less withdrawals during period | 200,803.40 | |
| | | 50,202.33 |
| Invested capital, Jan. 1, 1916 | | 1,048,760.46 |
| Deduct: | | |
| Profit for year ended Dec. 31, 1915 | 219,975.98 | |
| Less withdrawals during period | 80,354.14 | |
| | | 139,621.84 |
| Invested capital, Jan. 1, 1915 | | 909,138.62 |
| Deduct: | | |
| Profit for year ended Dec. 31, 1914 | 101,225.10 | |
| Less withdrawals during period | 54,811.08 | |
| | | 46,414.02 |
| Invested capital, Jan. 1, 1914 | | 862,724.60 |
| Deduct: | | |
| Profit for year ended Dec. 31, 1913 | 85,285.34 | |
| Less withdrawals during period | 53,948.36 | |
| | | 31,336.98 |
| Invested capital, Jan. 1, 1913 | | 831,387.62 |
| Deduct: | | |
| Profit for year ended Dec. 31, 1912 | 149,061.48 | |
| Less withdrawals during period | 49,837.94 | |
| | | 99,223.54 |
| Invested capital, Jan. 1, 1912 | | 732,164.08 |
| Deduct: | | |
| Profit for year ended Dec. 31, 1911 | 127,458.08 | |
| Less withdrawals during period | 52,930.72 | |
| | | 74,527.36 |
| Invested capital, Jan. 1, 1911 | | 657,636.72 |

| Year | Net income | Invested capital |
|---|---:|---:|
| 1913 | $85,285.34 | $831,387.62 |
| 1912 | 149,061.48 | 732,164.08 |
| 1911 | 127,458.08 | 657,636.72 |
| Total | 361,804.90 | 2,221,188.42 |
| Average, one-third | 120,601.63 | 740,396.14 |

Where the predecessor business was carried on by an individual, section 330 provides how net income for the prewar period shall be ascertained, and specifically makes provision for a reasonable deduction for salary or compensation to the individual for personal services actually rendered. The record shows that prior to incorporation George N. Clemson did not withdraw any amount from the business as salary and the petitioner's computation set out above has made no provision for a salary deduction. The record shows that Clemson's present salary from the petitioner is $25,000 a year. There is also some opinion testimony that $15,000 a year would have been a fair salary for his services in 1915. This was the opinion of a witness who was not connected with the business until October, 1915, and who prior thereto was an owner and proprietor of a jewelry business. There is nothing in the record to show that this witness was familiar with the character and amount of services rendered by Clemson during the prewar years or that he was in any wise competent to express an opinion as to what would be a reasonable salary for Clemson's services during these years. What Clemson's services were worth during a time some two to five years removed from the prewar period, or what his salary is from 15 to 17 years afterwards, clearly affords no basis for determining what would be a reasonable salary or compensation for his services during the prewar period. A careful examination of the entire record fails to disclose any basis upon which to determine what would be a reasonable salary or compensation for Clemson's services for the prewar period.

In computing the average net income for the prewar period, section 330 contemplates, among other things, a deduction representing a reasonable allowance for the exhaustion, wear and tear of the property used in the trade or business. In the petitioner's computation of the net income for the prewar period set out above, no provision has been made for such an allowance. It is stated in the petitioner's brief that the books prior to 1917 did not show all of the assets and it is contended that no adjustment should be made for such an allowance in the prewar years as during that time the cost of building new machines and all additions to property were charged as factory expense, and that such charges should be considered in lieu of depreciation. This contention might have some merit if the records showed that the sole proprietorship during the prewar years built new machines and otherwise made additions to its property. But it does not. While the evidence shows that the amounts expended prior to incorporation for building certain machines taken over by the petitioner were charged to expense, there is nothing to indicate whether the machines were built before, during, or after the prewar period, or the amounts so charged to expense.

The petitioner contends in its brief that the average net income for the prewar period as computed by it is ascertained "as nearly as may be" upon the same basis as provided for corporations as required by section 330. Without discussing the arguments advanced in support of this contention, we think that inasmuch as the petitioner has failed to furnish evidence as to what would be a reasonable deduction for salary or compensation for Clemson's services during the prewar period as specifically required by statute and also has failed to sustain its contention with regard to allowance for exhaustion, wear and tear, its computation of net income for the prewar period is not a correct basis for determining the war-profits credit.

Since we are unable to determine from the evidence the petitioner's average net income or invested capital, it has not been shown that the action of the respondent in determining the prewar profits credit under section 311 (b) is erroneous.

The remaining issue relates to the question of whether the petitioner is entitled to have its profits-tax liability determined under the provisions of sections 210 and 328 of the Acts of 1917 and 1918, respectively.

As stated in its brief, the principal basis of the petitioner's contention for a determination of its profits-tax liability under the relief provisions of the Acts is that it is placed in a position of substantial inequality resulting in exceptional hardship because of the time and manner of its organization and of the organization of its predecessor business. In other words, it contends that, if the Board does not determine its prewar income and permit it to have the benefit of the prewar credit provided in section 311 (a) instead of that provided by section 311 (b), a serious abnormality results which brings it within the scope of section 327.

Does the fact that the respondent has determined petitioner's war-profits credit under that provision of subdivision (b) of section 311, which is specifically applicable to cases where there was no net income, entitle the petitioner to have its profits-tax liability computed under section 328 of the Act? The determination of the war-profits credit as made by the respondent is the normal application of the statute where there was no net income for the prewar period, and in our opinion the mere fact that the credit was determined under the express and applicable provision of section 311 is not sufficient to constitute an abnormality of income or capital within the meaning of section 327. This contention of the petitioner is therefore denied.

The second point which the petitioner contends results in a substantial abnormality arises in connection with the acquisition of the assets of the sole proprietorship. George N. Clemson kept no general books of account, but only such records as related to sales and cash receipts and disbursements. No balance sheets were prepared to

show his capital. Clemson's machinery had been constructed in his own plant. At the time of the incorporation of the petitioner in October, 1917, Clemson sold to it the mixed aggregate of his business assets consisting of both tangibles and intangibles for substantially all of its capital stock. The directors of the petitioner thereupon made an inventory, and appraised the various assets thus acquired. Under section 331 of the Revenue Act of 1918, the assets acquired by the petitioner from Clemson can not be included in invested capital at a greater amount than their cost to him. The respondent used as the basis for determining invested capital the values of the tangible property set up by the directors in their inventory and appraisal. The petitioner contends that the basis thus used fails to recognize the value of the good will it acquired from George N. Clemson or the special values inherent in the special machinery with which the business was conducted.

With respect to the contention relating to good will, the record shows that prior to the time the petitioner acquired the business and until some time in 1920 the entire output of the factory was sold under contract to the Miller Falls Co. While Clemson's offer to the corporation to sell his business to it contains a reference to good will and the resolution of the stockholders accepting the offer accepted " in all its terms and conditions the aforesaid proposition " was placed in evidence the petitioner has not offered sufficient evidence as to whether the good will had any value at the time of acquisition, or what its value was. In the absence of such evidence, we are not in a position to hold that the exclusion of the good will from invested capital results in such an abnormal condition as to entitle the petitioner to have its profits tax determined under the relief provisions of the statutes. *Hutchins Lumber & Storage Co.*, 4 B. T. A. 705; *Goodheart's Broadway Laundry Co.*, 7 B. T. A. 978.

With respect to the contention relating to the special values inherent in the special machinery, the evidence shows that certain of the machinery was of such a character that its use resulted in the petitioner's expenditures for labor being much smaller than those of other hack saw manufacturers. While the respondent has apparently included this machinery in the petitioner's invested capital at the amount placed on it by the directors, there is no evidence as to what the actual value of the machinery was at the time it was turned over to the petitioner for its capital stock. No evidence was offered to show what this machinery had cost Clemson or that any attempt had been made to determine what it had cost him. Although the evidence shows that the cost of making the machinery was charged to expense, there is no evidence to indicate that the cost of the machinery could not be determined from the records that were maintained. So far as the evidence shows, the values placed on this machinery by the petitioner's directors may correctly reflect the special values alleged

to be inherent in it. In the absence of evidence showing that the actual cash value of this machinery including the special values contended for by the petitioner was materially or substantially greater than the value used by the respondent in the determination of the petitioner's invested capital, we are unable to hold that the petitioner is entitled to have its profits-tax liability determined under the relief provisions of the Acts.

While the petitioner received for stock a mixed aggregate of tangible and intangible property, there is nothing in the record to show that the values of the two classes of property could not be satisfactorily determined at the time paid in. The petitioner's directors valued these assets separately, and in determining the petitioner's invested capital the respondent has used the same valuation for the tangible property. It has not been shown that the intangible property had a value or what its value or cost was in the hands of the predecessor owner or its value when acquired by the petitioner, nor is it shown that its value or the value of other assets acquired for stock could not be determined. It has not been shown that the value of the tangible property as determined by the respondent is incorrect. We must hold, therefore, that the petitioner has not established its right to be assessed under section 210 of the 1917 Act for that portion of the period falling in 1917 or under section 328 for the period subsequent to 1917. In so far as section 210 of the Revenue Act of 1917 is concerned, the only factor to be determined is whether the invested capital can be satisfactorily determined, and we can not conclude from the evidence that this can not be done.

*Judgment will be entered under Rule 50.*